May it please the court, my name is Maxwell Bleacher speaking for the plaintiffs, appellants and the putative class. I hope you won't think it's too audacious or presumptuous for me to suggest to you how easy it will be to resolve this seemingly complicated case. I think all you need to do is pull up from your computer or pull down from your shelf, 588 3rd, go to page 665 in the left column and there you'll have the answer to this case. That's what Andy Kressler has called Gilly 2. I'm pretty familiar with Gilly. I went around on that for a long time. Two opinions. Well, that was a long time. But in Gilly 2, in the left column at page 665, this is what the court said. If the bilateral agreements in themselves have an illegal effect on competition when aggregated, then the bilateral agreements constitute the contract combination or conspiracy required for a claim under Section one of the Sherman Act. Now, what the plaintiffs in this case have alleged is that a network of vertical contracts between the programmers on the one hand and the distributors on the other hand, which contain restrictions such that the distributors are not free to compete with each other and the public does not get the benefit of choice or lower prices because that competition is interdicted contractually. If you apply the Gilly language to the facts of this case, the network of agreements in themselves, unlike Gilly, who couldn't, wouldn't or didn't allege that the agreement constituted a restraint on competition, but only that it would facilitate a restraint on competition. We're way beyond that. This complaint reeks with allegations how consumers are denied choice and how the contracts operating as an interlacing network have raised prices. Go ahead. Well, if we were to find that foreclosure of rivals is a necessary element to prove your claim, what could you point to in the record that would still allow you to make your case? Nothing, because that's why we amended the complaint. But there is no case of the Supreme Court or any of the circuit courts in the United States that require foreclosure to be an element of a vertical claim. Let me come at this just a slightly different way. You, in your briefs and today, this morning, you allege injuries to consumers, which would be an antitrust injury. But I didn't see any allegation of injuries to competition. And so the foreclosure element that Judge Callahan was referring to is a type of injury to competition, the horizontal or the collusion, another type of injury. Where is the injury to competition, not injury to the consumers? Injury to foreclosure is just one kind of competition that applies in specific cases and doesn't apply here. The injury to competition, Judge Ikuda, is if you go to our opening brief at page 12 and you read what's in the complaint, which is the statement of the chairman of the board and CEO of Echostar, now called Dish, made to the Federal Communications Commission and the statements of Mr. Dolan, the chairman of Cablevision. Here's what they say. These contractual restrictions have impeded their ability to put together packages of channels that would appeal to consumers, smaller and less expensive and more consumer friendly channels. And it's the competition among the cable companies, the satellite companies and the telephone companies at the distribution level that's been interdicted intentionally by the content provider programmers. And that's the competition that's caused the restraint and is in itself a violation of Section 1. And it's the competition, the lessening of competition that's produced the injury to consumers, which is choice and price. So I see you arguing about vertical restraints, but we have case like Ligon, which says, well, that type of vertical restraint, even if you have resale price maintenance, is not, we don't see that as an injury to competition, the Supreme Court says. So here they have some restriction on the package that they can compete, but not that there's any reduction of the competition amongst them. With due respect, I think you need to read Justice Kennedy's statement in Legion that said, yes, a single instance of resale price maintenance normally doesn't raise hairs on your head. But what he said was when it's pervasive throughout the industry, then it's dangerous because he said very clearly, then it deprives the consumers of choice and will have a tendency to raise prices. Here we have alleged an industry wide arrangement. Every significant programmer and every significant distributor, whether cable, satellite or telephone companies are not dependent, are implicated here and are restrained. So this is an industry wide agreement that clearly raises factual issues under the rule of reason, which Justice Kennedy said is now the traditional and standard method for deciding antitrust cases. So you're saying, if I'm understanding correctly, you're saying that the injury to competition is a vertical restraint that falls outside of what was approved by the Supreme Court in Legion. It's a different sort. No, it wasn't approved by Legion with due respect. Legion said a single retail price maintenance contract among all the people that make ladies handbags doesn't threaten anybody. But Justice Kennedy said if you look carefully, when you aggregate those together and all the industry is doing this, that's dangerous. Then he said these should require heightened scrutiny under the rule of reason. And that's what we have here, a network which covers, it's industry wide. I think you're misunderstanding Judge Akuda because she's saying that your type of injury is what was approved in Legion, not what was disapproved. Right? No. Are you suggesting that Legion approves this network of agreements? No. I guess that you're okay under Legion. I am okay under Legion. When you read the part that says, if the retail price maintenance agreements become industry wide or pervasive, then they're dangerous. That's what Justice Kennedy pointed out. But we don't have a case, right, that says this type of vertical restraint, in fact, is an injury to competition. I mean, the Ninth Circuit, we have a number of cases saying those sorts of vertical restraints are not injuries to competition. Sure, if you look at just one instance. That's the difference. But do we have, is there a case? That's the difference between this and what Gilley tried to allege but couldn't. This is a pervasive industry wide agreement that distinguishes it from something like Jefferson Parish, which is one hospital in the whole parish in New Orleans. So you're asking us to extend the law. There isn't a case directly on point. No, I'm asking you to just look at Gilley and say why this case isn't exactly what Gilley was talking about. Exactly. Except that in Gilley, the agreement was the exchange agreements, which anyone in the oil industry knows are facially prone and anti-competitive. But those exchange agreements were between horizontal competitors. But I submit to you today that if you if you if you read the teaching of Legion in Cal Dental and the District of Columbia Court of Appeals decision in polygram, you see that today we have a new environment in which the rule of reason has subsumed everything, but a very few number of horizontal agreements. And as professors Arita and Hogan can point out, the horizontal. Here's what they say. Quote, horizontal and vertical restraints do not always threaten competition in different ways or call for different analysis. So I say that the station is it is one without a difference. So what's your the best case or the closest case that looked at vertical restraints without any more, without anything else, and said that constituted an injury to competition? Well, the closest case, obviously, is is now because Gilley. But but Gilley, I agree with you. Those were horizontal restraints. But I'm telling you, it doesn't make any difference in today's world whether they're horizontal or vertical. And there is no case precisely like this one. There is no case that supports the preposterous notion that you can only get a vertical restraint, make it illegal with foreclosure. And why is why is Legion on the books? Why? Why does Justice Kennedy say resale price maintenance can be illegal under the rule of reason? Doesn't produce any foreclosure. And clearly in the ordinary one on one case, the anti competitive effect of a vertical agreement is foreclosure. We think that that's generally what you find. Well, we don't have any pervasive industry case. The closest one would probably be paramount pictures where it was a interrelationship of contracts that produced a clog on the competitive process. That's certainly. Do you want to save any time for rebuttal? Yes. OK, because you're a little under four minutes right now. Now you can focus on what they in response to what they say. Good morning, your honors. Good morning. I understand we have a change in counsel. Yes, my name's Glenn Pomerantz and I'm representing Fox Entertainment Group in this case. I will be sharing today's argument on our side with Mr. Burke. I will take the first 10 minutes of the allotted time and then I'll sit down and let Mr. Burke take the remaining five minutes. I'm going to primarily address the issue of injury to competition. OK. And Mr. Burke is primarily going to address the issues of Illinois brick and standing. All right. What I would like to first address is why the third amended complaint does not adequately allege the element of injury to competition. I will then turn to the law of tying and show why the zero foreclosure cases in Blau, Jefferson, Paris and others also apply to this case. And then at the end, I will turn to the issue of aggregation that counsel raised at the beginning of his argument, because we do not believe that aggregation changes the analysis here at all. We don't think it's appropriate, but even if you did aggregate, there still was no allegation of injury to competition. The law in this circuit is crystal clear as to what the elements are of a rule of reason section one case. You need an agreement that was intended to injure competition, that actually injured competition, and that injured the plaintiffs. And that last element includes both injury in fact and the antitrust injury element. Counsel has argued that the law has changed in the last 30 years, but the law has not changed with respect to the need to allege and prove injury to competition. Continental TV, State Oil and now Legion all looked at vertical restraints and said the per se rule does not apply. You need to allege and prove injury to competition. Now the case law has looked at one injury to competition from a vertical restraint, and that's foreclosure of rivals. And the plaintiffs knew that, because in their second amended complaint in this case, they specifically alleged foreclosure of channel rivals. In paragraph 44 of the second amended complaint, which is not the one before this court, they specifically alleged that independent channels have been unable to secure access to the distributor networks. The court then denied our motion to dismiss, and we went off and took discovery. And after discovery, they filed a third amended complaint, and they withdrew that allegation. They specifically said we are not alleging that foreclosure, that any rivals have been foreclosed from competition. They also specifically said that we are not alleging any horizontal conspiracy in this case. So then what's left? What's in their complaint that they are saying constitutes an adequate allegation of injury to competition? I think they're pointing to three things. The first thing they're pointing to is that the distributors have been restrained in the way that they compete, one against each other. That is that the distributors cannot offer smaller packages of channels, or they cannot offer a la carte channels. But simply to allege that a vertical restraint restrains what the distributor or retailer can do is not injury to competition. That's the very definition of a vertical restraint. But doesn't Legion hold open the possibility that under certain circumstances, a vertical restraint could constitute an injury to competition? Most certainly. It doesn't tell us how, but it holds that open. Well, I think it does tell us how, because if you look at each of the specific examples that Legion identifies as to what at least could raise a question of injury to competition, they fall into one of two categories. Legion looks at examples where the vertical restraint is being used to facilitate a horizontal cartel, or the vertical restraint is being used to foreclose a rival. And if you look at each of the examples in that section of the opinion, they fall into one of those two categories. There is no third category, and there certainly is not a category that is alleged in this complaint. So just to allege that the vertical restraint restrains what the distributor can do in the marketplace cannot be enough, or every vertical restraint is subject to at least an antitrust motion. It would get passed a motion to dismiss, and you're off and running on a very costly litigation. Well, the closing counsel says for a vertical restraint, maybe this is your aggregation point, but where the vertical restraint is across the board, then that creates a different situation. And again, if you look at Gilly and if you look at Legion, those are the two cases where there was a discussion of vertical restraints by different suppliers. One was retail price maintenance, the other was the horizontal agreements in Gilly. Both of those, the concern being expressed was the concern of facilitating a horizontal cartel. They were not aggregating for some other purpose. They certainly were not aggregating a series of vertical agreements by different suppliers in order to come up with some industry-wide injury to competition. There's no case, no case that stands for that kind of aggregation. The only other case cited in the brief, I believe, Your Honors, which addresses aggregation, is the Charles O. Finley case, but that's a very different fact pattern. That's one supplier entering into a bunch of agreements with downstream customers, and the question was whether because of that one supplier could you look at its market power by aggregating those contracts. There is not a single case cited by either side where there's aggregation of different contracts by different suppliers, vertical contracts, and aggregating it for any purpose other than to see if it supports a horizontal cartel. The next theory of injury that they say is in their complaint is that the agreements at issue raise the price, raise the price of the consumer. Again, that can't be enough. Legion tells us that in two different places in the opinion, that simply alleging that an agreement causes higher prices is not enough. Many vertical agreements will cause higher prices because they ask the downstream distributor or retailer to do something, have a well-equipped repair shop, advertise in a certain way, design your stores in a certain way, and those kinds of increased costs on the retailer or distributor will necessarily and often raise price. But Legion tells us that's not enough. The third way that they say their complaint alleges injury to competition is that it reduces choice. But again, every vertical restraint in some way reduces the choice. Well, now, is that their argument that the fact that the distributors are foreclosed from competing in any number, in any manner that they choose? Is that the argument that you're saying right now? Yes, yes. I think what they're saying is that the consumer has less choice, can't choose smaller packages of channels or a la carte channels because of the agreements at issue in this case, and they refer to that as a reduction of choice for the consumer. But again, that's true of most vertical restraints. The classic vertical restraint case is the Continental TV versus Sylvania case, the territorial restraint. And in that case, the consumer is not able to go to another Sylvania television store in the territory assigned to the particular retailer. They have fewer choices, options of where to get Sylvania TVs. If you look at any franchise agreement, Starbucks, McDonald's, it requires the retailer to design their store in a certain way and offer a certain menu. Consumers are limited in the choices of what they can buy at a McDonald's or at a Starbucks. But that's simply not enough to allege injury to competition. The case law is clear that what you need is either a foreclosure of arrival or a horizontal agreement. I want to also address specifically the law of time in Bundling because I think this is unquestionably a tying case. They allege specifically in paragraph 2 that there is a tying product and a tied product. And the law is clear that you need foreclosure in the tied product market in order to state a tying claim. And when there has been no allegation of foreclosure in that market, there cannot be a tying claim. The Blau case by this court specifically adopts the zero foreclosure rule, and that's what we have here. What they're essentially alleging is that there's two categories of channels, the ones that the distributor or consumer want and the ones that they don't want. It's not that they want to go out and buy another channel, but they can't because of the tie. There's just simply two categories, the ones they want and the ones they don't want. And what this court said in Blau, relying on Jefferson Parish, is that if there is no allegation that you want to buy the tied product from someone else, then there is no foreclosure and therefore no injury to competition. And this is a zero foreclosure case, as the district court properly found in reliance on Blau. That is all I have to argue. It's time for counsel, so almost. Thank you. Unless he wants to give you some of his time, but he doesn't seem to be wanting to right now. Good morning, Your Honor. Good morning. May it please the court. Arthur Burke representing the distributor defendants in this case. We have a slightly different line of argument here. It's the question of Illinois BRIC and antitrust standing. So why shouldn't the exception to Illinois BRIC, which has been applied in this circuit for instances where there is no realistic possibility that the direct purchasers will sue for the antitrust violation, be extended to cover the consumers? I don't believe that that actually is the case, Your Honor. I think the case you're referring to is the San Diego realtor case, where there's a reference to the fact that it was unlikely that the intermediary would bring a lawsuit. But I think that was really an explanation for the owned and controlled exception, which was actually enunciated in Illinois BRIC. The reason that you have an owned and controlled exception is that if the manufacturer owns the intermediary, the intermediary is not going to sue its own parent. And so that was not a separate exception to Illinois BRIC. It was an explanation for the reasons behind the owned and controlled exception. In Delaware Valley, the Court's most extensive and recent statement of the Illinois BRIC exceptions, it's clear that there are only three exceptions to Illinois BRIC. The owned and controlled exception, the cost plus contract exception, and the co-conspirator exception. And none of those three exceptions are applicable to these facts. And maybe it would make sense to go through the plaintiff's arguments with respect to each of those. Could I just ask you preliminarily, and even if we agreed with you on Illinois BRIC and Associated General, does that merely go to damages and not to injunctive relief? What I would say is, Your Honor, it goes to both elements of relief. In the Kendall case, this Court approved the dismissal, affirmed the dismissal of a case on Illinois BRIC grounds, both with respect to damages and with respect to injunctive relief. But wasn't that more of a pleading issue? And I guess what I would say is, Your Honor, especially the Associated General contractor's case, the antitrust injury standard is applicable both with respect to damages and with respect to injunctive relief. And that also is this Court's Oregon laborer's case. And where that specifically said that the first element, the antitrust injury element, that must be met in both a case for injunctive relief and a case for damages. And perhaps it would make sense to elaborate a little bit on why we don't think there's antitrust injury here as well. The Court in Associated General Contractors said that in order to be a proper plaintiff, either for injunctive relief or for damages, you have to be a participant in the market in which trade is restrained. In this case, plaintiffs have pled that trade has been restrained in an upstream market where the programmers sell programming channels to the distributors. And then the distributors resell it to consumers. Consumers are not participants in that upstream market. If you look at paragraph 47 of the plaintiff's complaint, the only restraints that they challenge are the upstream restraints between programmers and distributors. That is a market in which they are not participants. And so it's clearly the case under Associated General Contractors, Oregon Laborers, and the other applications of that doctrine by this Court, that they lack antitrust standing for both injunctive relief and for damages. To just go back briefly to Illinois BRIC, because I think there are two kind of exceptions that plaintiffs invoke, and it's important for me to briefly address why they're inapplicable. First, plaintiffs invoke this owned and controlled exception. But this Court has never applied the owned and controlled exception under facts like this, where the intermediaries, the distributors, are publicly traded companies with their own boards. Those cases have been situations where the upstream company literally owns the intermediary and can direct its actions. And that's not the case here. I mean, to the contrary, as plaintiffs' counsel noted, some of the distributors in this case have actually objected to the programmers' conduct. So there's clearly no level of control there. The second exception that the plaintiffs invoke is the so-called co-conspirator exception. But this Court has only ever applied the co-conspirator exception in situations involving resale price maintenance. So that's the Shamrock case. And in that case, an upstream dairy was imposing specific prices on the grocery stores at which the grocery stores resold to consumers. In that case, the Court held that consumers would have standing under the co-conspirator exception because there was really no question of pass-on under those facts. You knew what the overcharge was. It was exactly what was paid based upon this resale price maintenance agreement. Here, there's absolutely no allegation of a vertical price restraint. The restraints that plaintiffs challenge here are non-price restraints. So under Shamrock, the co-conspirator exception is inapplicable. And to make it very clear, the Court's most recent pronouncement in Delaware Valley, again, when it lays out these exceptions very clearly, in footnote 1 of Delaware Valley, this Court made very clear that the co-conspirator exception only applies in situations involving resale price maintenance. So that's, again, not these facts. So it's very clear. We need to wrap up. You're moving into overtime. Okay. I think I'm done, Your Honor. Thank you very much for your time. All right. Thank you. I need to do this in bullet point fashion. But first, the argument that we haven't alleged injury to competition is completely preposterous. I commend to you and I urge you and I implore you to read, if nothing else, paragraph 4 of the Third Amended Complaint, which is in the Exhibit Record 184, which lays out in painful detail how the competition among and between distributors of cable, telephone companies, and satellites has been restrained to the detriment of consumers. So it's just crazy to say we haven't alleged an injury to competition or to the competitive process. Second, aggregation. Justice Kennedy in Legion says resale price maintenance should be subject to more careful scrutiny. By contrast, if many competing manufacturers adopt the practice depriving consumers of a meaningful choice, that's what we have here. We have everybody in the industry adopting the same restrictions such that at the end of the day, the distributors who want to compete with each other, they're begging to compete with each other, can't do so because of these contractual restraints. Now, the aggregation is not is covered not only by Legion, but by the standard stations decision of the Supreme Court, where it said when it's remembered that all the other major suppliers have been using requirement contracts and it is noted that the relative share of their business has not been affected. You can conclude by aggregating the effects. These standard stations only have 16 percent of the market. What made this were restrained and the Supreme Court's views that everybody else was doing the same thing, just like we have here. Third, this is not a tying case in the Jefferson Parish sense. That's a one-on-one situation. This is a bundling case. And it's judged by the rule of reason, which Justice Kennedy reinvigorated in Legion. The rule of reason covers this case. We're only at the pleading stage. All these arguments about that it won't affect competition or that it benefits consumers or whatever, that's all going to get thrashed out if, as in when, you allow the case to proceed to the next level. All we're saying here is can you take a step back, look at Gilly, and say that this is not a network of agreements which, taken together, have the effect of restraining competition to the detriment of consumers in terms of choice. And there's a jillion cases, starting with theme promotions the most recent, that say the reduction of choice is an anti-competitive effect. There's Verisign. There's Adman. A jillion cases that say increasing prices as a result of an agreement is an anti-competitive effect. So we have alleged, unlike Gilly, who couldn't, wouldn't or didn't, we have alleged a completed restraint, a network of contracts, producing a restraint on the competitive process among and between distributors, which has deprived consumers of choice and raised their prices. That's all we need. That satisfies the Kendall versus Visa requirements of what a Section 1 restraint as laid out by Mr. Pomerance. We satisfy that. Now we need to go to the next step and see what the proof shows. And I urge you, therefore, to reverse this and allow this case, which is significant to consumers, which the Federal Trade Commission says is sucking $100 million out of the economy unnecessarily. I urge you to let it go forward. Thank you both for your excellent argument in a difficult case. This matter will stand submitted.  All rise. The Court of Assessments has adjourned.
judges: Rymer, Callahan, Ikuta